SORONDO, J.
Uvencia Dixon, defendant, appeals her conviction and sentence for trafficking in cocaine.
Defendant and Jorge Llerena were both charged with trafficking in cocaine. Llere-na is the father of defendant’s children, the couple lived together at the time of the offense, and although not legally married, they considered themselves husband and wife. The state sought to prove that Llerena conducted a sale of cocaine transaction with two undercover police officers.
Defendant and Llerena were represented by a single, privately-retained attorney in a one-jury trial. Before trial, the prosecutor stated on the record that he had offered a plea bargain of ten years in state prison for Llerena and five years in state prison for defendant. The trial court explained to Llerena and defendant that if they chose to proceed to trial, they would be facing a mandatory minimum sentence of fifteen years in state prison. Llerena responded, “I’d like to go to trial.” However, the trial court, perceiving uncertainty on the part of defendant, questioned her about the plea offer.
Defense counsel informed the court of defendant’s alleged role in the crime charged by stating, “What she is worried about is the fifteen years for something that all she was doing in the house was cooking.” The court then asked the prosecutor to proffer the allegations against defendant, which the prosecutor did.
Following this proffer, the trial court conducted a colloquy with defendant outside the presence of her husband. The trial court expressed concern regarding a potential conflict of interest between defendant and her husband.
Following defendant’s rejection of the plea offer, the prosecutor asked the court to conduct an inquiry as to whether defendant wished to waive any potential conflict of interest that might arise from her joint representation at trial, with her husband, by a single attorney. The court did not explain to defendant how the conflict with her husband might impact her defense at trial, nor did the trial court inform defendant that she had the right to be represented by an independent court-appointed attorney. The colloquy then ended and Llerena was asked to re-enter the courtroom.
Defendant and Llerena decided to go to trial, and were both convicted of trafficking in cocaine. Defense counsel filed a motion for new trial based upon an alleged conflict of interest between the two defendants. At the hearing on the motion, defense counsel informed the court that he never spoke to defendant about her case outside the presence of her husband. He saw defendant alone for the first time at the jail, subsequent to the jury verdict. At this time, defendant told counsel that she was dissatisfied with the trial strategy agreed upon by counsel and her husband, but could not assert her opinion in her husband’s presence. Defense counsel also informed the court that defendant was unaware of her right to obtain court-appointed counsel, and believed that she could only be represented by the attorney retained by her husband. Finally, defense counsel asserted that given defendant’s minimal involvement in the narcotics transaction at issue, she may have been able to obtain a more beneficial plea bargain through independent counsel.
The trial judge denied the motion for new trial on the ground that she properly advised defendant about the conflict prior to the trial. Defense counsel requested an evidentiary hearing regarding the conflict *1280 of interest. The trial judge denied counsel’s request for an evidentiary hearing and his motion for new trial. Defendant and Llerena were both sentenced to fifteen years in state prison. This appeal followed.
Defendant argues that there was an actual conflict of interest between herself and defense counsel and that the trial court failed to conduct a proper hearing pursuant to the requirements of Larzelere v. State, 676 So.2d 394 (Fla.1996), to secure a proper and valid waiver of that conflict. Because we conclude that there was no actual conflict of interest, we disagree and affirm.
It is well established that “[a]n actual conflict of interest that adversely affects counsel’s performance violates the Sixth Amendment of the United States Constitution.” Larzelere, 676 So.2d at 403; see also Barclay v. Wainwright, 444 So.2d 956 (Fla.1984). It is equally clear that criminal defendants are entitled to waive their right to conflict-free counsel. See Larzelere, 676 So.2d at 403; see also United States v. Rodriguez, 982 F.2d 474 (11th Cir.1993). Before reaching the issue of waiver, however, it is essential to determine whether an actual conflict existed.
We begin by noting that defendant did not raise a conflict of interest objection before or during trial. The inquiry conducted by the trial court was initiated by the judge, who apparently perceived some hesitation on defendant’s part when she was questioned on her rejection of the state’s plea offer. During the colloquy that ensued the defendant reassured the court that she did not want to take the plea because she was innocent of the charges — an assertion she subsequently made to the jury during her trial testimony. As there was no objection, on appeal defendant “must demonstrate that an actual conflict of interest adversely affected [her] lawyer’s performance.” Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). This she has failed to do.[1]
In Webb v. State, 433 So.2d 496, 498 (Fla.1983), the Florida Supreme Court adopted the definition of conflict of interest articulated in Foxworth v. Wainwright, 516 F.2d 1072, 1076 (5th Cir.1975):
A conflict of interest is present whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing.
In State v. Oliver, 442 So.2d 1073, 1075 (Fla. 3d DCA 1983), this Court stated:
The Foxworth test for conflict is not an abstract one, but calls for an examination of the evidence presented at trial or at the hearing on the motion to vacate the judgment. Thus, appellee’s claim of actual conflict will succeed only if the record affirmatively indicates that, due to the joint representation, the co-defendant gained significantly at her expense, and that appellee was damaged by the common defense.
See also Wright v. State, 442 So.2d 301 (Fla. 5th DCA 1983). We have carefully reviewed this record and can find no such damage was inflicted on defendant. Both defendant and Llerena claimed innocence. Defendant testified that she was in the bedroom feeding her children and that she was unaware that a drug transaction was *1281 taking place in the other room. Llerena also testified that he did not know that a drug transaction was occurring within the house. He further testified that the scale, ledger, and rubber bands found in the house were used for his jewelry business. Their defenses were not contradictory or inconsistent, particularly in light of the fact that there was a third defendant in the house at the time. Although there was more evidence against Llerena, the difference was not overwhelming.
Defendant argues to the contrary that the quantum of evidence against Llerena was significantly greater than that against herself.[2] She states at footnote 1 of her initial brief that the evidence against her “was limited to her act of being present in the kitchen and handing her husband a cutting instrument upon his request.” This is not entirely accurate. At the time Llerena made the request for a cutting instrument he was negotiating the sale of the cocaine with the undercover officer in the kitchen of the house. The cutting instrument was intended to be used to cut a hole in the package containing the cocaine, which was on the kitchen counter. Additionally, when the police entered the house in force, defendant grabbed the kilogram of cocaine, threw it to Llerena and screamed, “policía, policía!” Llerena caught the package, ran with it and threw it over the fence and into his neighbor’s yard. Thus, although there may have been more evidence against Llerena, there was also significant and probative evidence against defendant.
This record does not, as required by Webb, “affirmatively indicate that due to the joint representation, the co-defendant gained significantly at [defendant’s] expense, [or] that appellee was damaged by the common defense.” Oliver, 442 So.2d at 1075.
We recognize that “the Sixth Amendment does not require state trial courts to ... initiate inquiries into the propriety of multiple representation in every case.” Cuyler v. Sullivan, 446 U.S. at 346, 100 S.Ct. 1708. We note, however, that in Cuyler, the Court acknowledged that “a possible conflict inheres in almost every instance of multiple representation.” Id. at 348,100 S.Ct. 1708. Because of this, the Court promulgated rule 44(c) of the Federal Rules of Criminal Procedure which reads as follows:
Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant’s right to counsel.
Because joint representation of criminal defendants is inherently suspect, and is a tactic sometimes employed to obstruct potential cooperation with law enforcement, we respectfully suggest to the Florida Supreme Court that it promulgate a rule of criminal procedure which requires Florida’s trial judges to address the issue of potential conflict in all cases as soon it becomes apparent that more than one defendant will be represented by the same lawyer.
Affirmed.

. The state argues that because there was no objection on the basis of conflict of interest, the issue has been waived for appellate review. We do not agree. In Wright v. State, 423 So.2d 633, 634 (Fla. 5th DCA 1982), the Court held that "even in the absence of an objection, appellants have the right to demonstrate, if they can, that actual conflict appears in the record.” See also Foster v. State, 387 So.2d 344 (Fla.1980). This is consistent with Sixth Amendment principles enunciated in Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), and Glosser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

. This argument is offered in support of the proposition that a conflict of interest is more likely where there are "markedly different degrees of relative culpability between defendants." Parker v. Parratt, 662 F.2d 479, 484 (8th Cir.1981). We note, however, that a disparity in the quantum of evidence establishing guilt does not itself create a conflict of interest. See Washington v. State, 419 So.2d 1100, 1102 (Fla. 3d DCA 1982).